FILED
JAN 9 3 52 PM '97
U.S. CLERK'S OFFICE
BY
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

TED MEYER ET AL. §
§
V. § CAUSE NO. A-96-CA-625 ADA
§
AUSTIN INDEPENDENT SCHOOL §
DISTRICT, ET AL. §

ORDER

Came on for consideration this date the Motion of Defendants Austin Independent School District ("AISD"), the members of the Board of Trustees of AISD in their official capacities;[1] Dr. James H. Fox, Jr. in his official capacity as Superintendent of the AISD,[2] Kent Ewing ("Ewing") and Jorge Rodriguez ("Rodriguez"), in their official and individual capacities as Principal and Vice-Principal of Bowie High School respectively ("Defendants") to Dismiss filed on September 23, 1996 (Clerk's Docket No. 6). The Plaintiffs their Response on November 5, 1996 (Clerk's Docket No. 21). The Court conducted a hearing on all pending issues on January 6, 1997.

The Plaintiffs ask for a declaratory judgment as well as injunctive relief and nominal damages for the alleged violation of the students' and parents' right to substantive and procedural due

---

[1] The Plaintiffs have dismissed their claims against this Defendant.

[2] The Plaintiffs have dismissed their claims against this Defendant.



30

000169

rights. The Plaintiffs allege that their First, Fifth, and Fourteenth Amendment rights under the United States Constitution were violated. The Plaintiffs bring this case under the auspices of 42 U.S.C. 1983.

**Factual Background.**

The Plaintiffs allege, generally, that they were among nine students wearing maroon colored shirts to an Austin high school who Defendants Ewing and Rodriguez 1) stopped as they entered school one day, 2) told them that they were engaging in gang related activity, 3) photographed individually and together 4) removed and suspended from school for a three day period. Defendants Ewing and Rodriguez also told the students that when they returned to school that they were prohibited from assembling in groups of more than three students and prohibited them from wearing same colored clothing on the same day and warned them of future discipline if they violated these rules. While the Plaintiffs concede that they all wore similar colored shirts to school on the day in question, they contend that they are not members of any gang and were not disruptive on the day in question.

Dismissal of a complaint pursuant to Rule 12(b)(6) for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v Gibson*, 355 U.S. 41, 45-46 (1957). The Court must accept the Plaintiff's



000170

factual allegations as true. *Cinel v. Connick,* 15 F.3d 1338 (5th Cir. 1994), *cert. Denied,* 115 S.Ct. 189 (1994).

**The Plaintiffs' First Amendment Claims.**

The First Amendment provides that "Congress shall make no law ... abridging the right of freedom of speech." The Supreme Court has never adopted an absolutist view that prohibits any government restriction of speech. The threshold question to determine the validity of government regulations concerning speech is whether the speech is "pure speech" or "symbolic speech"--that is the type of speech intended to convey a message. The First Amendment protects all pure speech.[3] Symbolic speech receives First Amendment protection only after scrutiny by the courts. *Texas v. Johnson,* 491 U.S. 397, 403-06 (1989). The Supreme Court has rejected the argument that all conduct intended to convey a message constitutes symbolic speech protected by the First Amendment. *Id.* At 404 (citing, *United States v. O'Brien,* 391 U.S. 367, 376 (1968). Courts apply a two step test that examines whether "an intent to convey a particularized message was present, and whether the likelihood was great that the message was understood by those who viewed it." *Id.* (Citing, *Spence v. Washington,* 418 U.S. 405, 410-11 (1974).

The Plaintiffs submit that the legal question is one involving

---

[3] Certain categories may receive less protection, such as obscenity or defamatory words.



000171

the government's ability to regulate speech involving public school students. Although students are "persons" under the Constitution and retain some right of freedom and expression while in public schools, those rights are limited. Students' First Amendment rights are not coextensive with those of adults because of the need for balancing the necessity of maintaining the classroom environment. School authorities may proscribe student speech that appears inconsistent with its "basic educational mission." *Bethel Sch. Dist. v. Fras.*, 478 U.S. 675, 685 (1986). The leading case in this area is that of *Tinker v. Des Moines Ind. Sch. Dist.*, 393 U.S. 503 (1969). In *Tinker*, the Court found that the suspension of several students for wearing armbands to protest the Vietnam War violated the First Amendment. The *Tinker* Court was careful to note the absence of actual or likely classroom disruption or violence on the campus, and held that the mere fear by school administrators of a disturbance caused by the wearing of armbands did not justify the restriction on students' right of free speech. *Id.* at 508. The Supreme Court held that school administrators may impose restrictions or regulations proscribing expression in the face of evidence that the regulations are "necessary to avoid material and substantial interference with schoolwork or discipline." *Id.* at 511.

The Court need not reach any decision that would entail resolution of a factual dispute about the level of disturbance, if



000172

any, that the Plaintiffs were causing at the time the school administrators detained them. The Plaintiffs have a difficult road to hoe with regard to their claims under the First Amendment. To succeed in their First Amendment claims, the Plaintiffs must establish that they had a protected right to wear their clothes as symbolic speech, but argue that their wearing of identically colored clothing was not symbolic of anything.[4] The reason for Plaintiffs' dilemma is obvious: the Defendants contend that they were justified in taking disciplinary action with respect to the Plaintiffs because they believed that the students were wearing identical colors for the purpose of identifying their gang association. The Plaintiffs insist that the identical colored clothing was not worn to symbolize gang affiliation.[5] While this may be pertinent to Plaintiffs' due process argument (that it was wrongful to accuse the Plaintiffs with gang association and suspend them without due process), it is lethal to the Plaintiffs' First Amendment argument that their act of wearing the clothing was protected as symbolic speech. The Magistrate Court GRANTS the Defendants' Motion to Dismiss with regard to the Plaintiffs' First Amendment claims.

---

4 For example, in the affidavit of Carolyn Preciado, she indicates that she did not even notice what color her friends' shirts were, so it is difficult to argue that she was engaged in some form of symbolic communication through wearing a maroon shirt.

5 The Plaintiffs wrote in their Response that "[t]hey did not want to appear to be a member of a gang." Response at 4.

**The Plaintiffs' Substantive Due Process Claims.**

The Plaintiffs contend that the Defendants violated their right to substantive due process under the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983. School officials are immune from liability for civil damages unless they knew or reasonably should have known that their conduct with respect to students would violate clearly established constitutional rights of which a reasonable person would have been aware. *Wood v. Strickland*, 420 U.S. 308 (1975). Defendant Ewing contends that his involvement was limited and fell within the wide ambit of qualified immunity. The Court agrees. Accepting the allegations in Plaintiffs' Complaint as true, Defendant Ewing, at most, stopped the Plaintiffs after learning of a disruption on the school campus and detained them until Defendant Rodriguez arrived. All of the remaining actions concerning the Plaintiffs were taken by Defendant Rodruigez.

The Court finds that Defendant Ewing had qualified immunity with respect to all of the Plaintiff's claims with regard to substantive due process. Qualified immunity is an affirmative defense that shields government officials performing discretionary functions from personal liability for civil damages. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982); *see also*, *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034 (1987). Qualified immunity is available to officials in their individual capacities in civil rights actions. *Babb v. Dorman*, 33 F.3d 473,



000174

575 n. 5 (5th Cir. 1994). The determination of qualified immunity is entirely a question of federal law. Qualified immunity protects government officials from liability "if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lassiter v. Alabama A&M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994)(quoting, Harlow, 457 U.S. at 818, 102 S.Ct. 2738). Only in exceptional cases will 'government actors have no shield against claims made against them in their individual capacities." *Id.* Finally, "[f]or the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make obvious to all reasonable actors, in the defendant's place, that 'what he is doing' violated federal law." Id. At 1149-50, *citing, Anderson*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039 (1987). Qualified immunity is immunity from suit rather than a mere defense to liability, which like absolute immunity, is effectively lost if a case is erroneously permitted to go to trial. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

The Fifth Circuit provided the course of analysis in the case of *Hassan v. Lubbock Ind. Sch. Dist.*, 55 F.3d 1075, 1079 (5th Cir. 1995). The first step is to determine whether the Plaintiffs have established the violation of a clearly established right. The Court is next to inquire whether the defendants' conduct was

objectively reasonable in light of the legal rules clearly established at the time of the incident in issue. Therefore, even if the Court finds a violation of the plaintiffs' constitutional rights, the individual defendants are immune from liability if reasonable public officials could differ on the lawfulness of their actions. *Blackwell v Barton*, 34 F.3d 298 (5th Cir. 1994). This is merely an affirmation of the Supreme Court's holding in *Anderson v. Creighton* that even if a law is established as a general principle, officials could still assert qualified immunity if a reasonable official under the same circumstances would not have known her conduct was unreasonable. *Anderson*, 483 U.S. 635, 640.

The Plaintiffs have failed to allege any conduct on the part of Defendant Ewing that violated any clearly established right of the Plaintiffs'. Absent any such violation, the Court must dismiss the Plaintiffs' claims against Defendant Ewing. Defendant Ewing's conduct, cast in the terms most favorable to the Plaintiffs, falls dramatically short of asserting a clearly established right. Therefore, Defendant Ewing is entitled to qualified immunity without analysis of whether reasonable school administrators would disagree on the lawfulness of their actions.

Nor can the Court identify any AISD policy or procedure that caused the Plaintiffs to suffer a violation of their constitutional rights. There is no evidence that it is the policy or custom of AISD to suspend students (on an emergency basis or otherwise) for

a period of three days without providing any type of disciplinary hearing or opportunity for the students (or their parents) to provide their side of the argument. Therefore, the Plaintiffs have no claim against Defendants Ewing or Rodriguez in their official capacities, as these claims would actually be claims against AISD. Therefore, the Court GRANTS the Defendants' Motion to Dismiss with regard to the Plaintiffs' claim against the Defendants in their official capacities.

The next question is whether Defendant Rodriguez is entitled to qualified immunity with regard to the Plaintiffs' claim of violation of their right to substantive due process for taking the following actions: the students were photographed; they were "taken in front of" school administrators and teachers who were told that the students were engaged in "gang related activity;" they were prohibited from wearing similar clothing; and their parents were told that they were involved in gang activity. The Plaintiffs argue that Defendant Rodriguez' conduct violated the Plaintiffs' "clearly established substantive due process rights to be free from unwarranted intrusions into their personal integrity and freedom from unreasonable restraints." The Plaintiffs contend that the Defendants' false accusations concerning their participation in gang activity violated the plaintiffs' substantive due process



000177

rights and stigmatized them.[6] The Plaintiffs argue that Defendant Rodriguez violated their protectable liberty interest.

The Court finds, as a matter of law, that Defendant Rodriguez is entitled to qualified immunity with regard to the Plaintiffs' claims of violation of substantive due process. The Court finds that the Plaintiffs have failed to establish that they, as students, had a clearly established constitutional *liberty* interest in this case.[7] The Plaintiffs appear to contend that they are entitled to a "liberty" interest because they should have been "free" from the conduct committed by Defendant Rodriguez. The Court holds that none of Defendant Rodriguez' actions violated any clearly established constitutional rights of the Plaintiffs. The Plaintiffs provide no legal authority that would suggest that a school administrator is not free to discipline students that he reasonably believes are violating school policies. More specifically, the Plaintiffs have failed to establish that they had a clearly established *constitutional* right to be free from being assembled together and photographed, or being accused of improper conduct such as wearing gang related colors. The Court notes the language of *Hassan*, a fairly similar case, in which the Fifth

---

[6] The Plaintiffs have not made a claim of defamation, which would be a state law claim.

[7] The Court expresses no opinion whether there are other constitutional claims that the Plaintiffs might have alleged that might not be subject to dismissal.

Circuit wrote:

> That a better punishment may have been available does not establish that the punishment administered was unconstitutional. To so hold would run counter to the Supreme Court's affirmance of "the comprehensive authority of the States and school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools." (Citing, *Tinker*, 393 U.S. at 507, 89 S.Ct. at 737).

*Hassan*, 55 F.3d at 1082.

The Court finds, as a matter of law, that the Defendants' conduct with regard to the students was objectively reasonable in light of the facts that the Plaintiffs have alleged. Therefore, the Court GRANTS Defendant Rodriguez' Motion to Dismiss.

In that the Court has dismissed the claims against Defendants Rodriguez and Ewing in their official and individual capacities with regard to this claim, the Court also GRANTS the Motion to Dismiss of Defendant AISD.

**The Plaintiffs' Procedural Due Process Claims.**

The Plaintiffs complain of the manner in which the Defendants suspended them from school. As discussed above, Defendant Ewing stopped (or seized) the Plaintiffs after learning of a disruption on the school campus but did not participate in the suspension of the students. Therefore, there is no allegation that he violated the Plaintiffs' rights to procedural due process by suspending the Plaintiffs. The question is whether Defendant Rodriguez is entitled to qualified immunity for the manner in which he suspended the Plaintiffs.



000179

The Plaintiffs contend that it has long been clearly established that "at a minimum ... students facing suspension ... must be given some kind of notice and afforded some kind of hearing." *Goss v Lopez*, 419 U.S. 565, 578 (1975). The *Goss* Court explicitly rejected formal trial-like procedures. The Defendants respond that the students were dismissed pursuant to the school district's emergency provisions.

Students do not have a constitutional right to an education, but if the state provides and compels free schooling, students have a property right in that education, and that right cannot be removed from them without due process. *Goss*, 419 U.S. at 574, 95 S.Ct. at 736. The Fifth Circuit has written that, in the context of school suspension hearings, "the process due may vary in particular cases depending on the circumstances..." *Keough v. Tate County Bd. Of Educ.*, 748 F.2d 1077, 1081 (5th Cir. 1984)(citing, *McLain v. Lafayette County Bd. Of Educ.*, 294 F.2d 106, 110 (5th Cir. 1982).

In this case, the Plaintiffs contend that the Defendants did not provide any hearing before suspending them for three days. They contend that there was no opportunity for the Students' parents to meet with school adminsitrators and discuss the suspensions. The Defendants argue that the students were not "suspended" but were removed on an emergency basis because of the danger to themselves and other students that was present from their



000180

clothing. The Plaintiffs contend that the three day suspension was unnecessary to address the "emergency" that the manner of dress may have caused, and that the three days constituted a suspension that required a *Goss* type hearing. The Court is aware that Courts have given wide berth to school administrators with regard to the *Goss* standard. For example, in *Keough*, 748 F.2d 1077 (5th Cir. 1984), the Fifth Circuit held that an informal "give and take" sessions between student and principal met procedural due process requirements for short term suspensions. 748 F.2d at 1081-82. The Court finds that the Plaintiffs could establish that a suspension of three days was a serious disciplinary action and that they had a clearly established right to some form of hearing prior to receiving a three day suspension. The Court also finds that the Plaintiffs could establish that Defendant Rodriquez' conduct was not objectively reasonable in light of the legal rules clearly established at the time of the incident in issue. The Court DENIES the Motion to Dismiss filed by Defendant Rodriguez.

**The Plaintiffs' Equal Protection Claims.**

The Plaintiffs contend that they were treated differently from other similarly situated students on the basis of their ethnicity.[8] The Plaintiffs base this claim on a generalized belief that there were other students who were either disruptive and/or wearing

---

[8] This is not stated explicitly in the Plaintiffs' Response filed with the Court but was argued at the January 6, 1997 hearing.



000181

similar clothing who were not detained, photographed, or suspended from school. The Plaintiffs offer no support for this argument. The Court DISMISSES this claim without prejudice to the Plaintiffs being allowed to amend their pleadings if discovery reveals facts that support this claim.

**The Plaintiffs' Claims Against the School District.**

School boards, district, and officials are amenable to suit under 42 U.S.C. § 1983, and absolute sovereign immunity does not protect them. *Monell v. Dept. Of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978). Section 1983 allows a cause of action against state officials and entities, with some limitations, for violation of an individual's constitutional rights. This statute is essentially an enabling statute allowing for money damages against government officials, municipalities, and school districts when they violate an individual's constitutional rights. *See*, *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473 (1960). Injunctive relief is also available under the statute as well.

The Court DENIES the Defendants' Motion to Dismiss the Plaintiffs' claim for injunctive relief against Defendant AISD.

**The Plaintiffs' Declaratory Judgment Claim.**

The Defendants contend that § 37.004 of the Texas Civil Practices and Remedies Code precludes this Court from declaring that the Defendants violated the civil rights of the Plaintiffs. The Court DENIES the Defendants' Motion to Dismiss this claim.

**The Plaintiffs' State Law Constitutional, Equitable, and Injunctive Claims.**

The Defendants ask the Court to dismiss the Plaintiffs' claims for monetary damages for alleged violations of their rights under the Texas Constitution. The Texas Supreme Court has held that no cause of action exists for monetary damages based on violations of the Texas Constitution. *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 150 (1995). To the extent that the Plaintiffs seeks monetary relief under the Texas Constitution, the Court GRANTS the Defendants' Motion to Dismiss. The Court DENIES the Defendants' Motion to Dismiss the Plaintiffs' claim for injunctive relief. The Court is unable to identify any legitimate claim for equitable relief, but declines to dismiss any such claim at this time.

**Summary.**

The Court GRANTS the Defendants' Motion to Dismiss with respect to the Plaintiffs' First Amendment claims. The Court GRANTS the Defendants' Motion to Dismiss the Plaintiffs' claims of violations of the Plaintiffs' rights to substantive due process. The Court GRANTS Defendant Ewing's Motion to Dismiss the Plaintiffs' claim of violation of their rights to due process. The Court GRANTS the Motion of Defendant Rodriguez, in his official capacity, to Dismiss the Plaintiffs' claim of violation of their rights to due process. The Court DENIES the Motion of Defendant Rodriguez, in his individual capacity, to Dismiss the Plaintiffs' claim of violation of their rights to due process. The Court

GRANTS the Defendants' Motion to Dismiss the Plaintiffs' Equal Protection claims. The Court DENIES the Defendants' Motion to Dismiss the Plaintiffs' claim for injunctive relief against Defendant AISD. The Court DENIES the Defendants' Motion to Dismiss the Plaintiffs' claim for declaratory relief. The Court GRANTS the Defendants' Motion to Dismiss the Plaintiffs' claim for monetary damages under the Texas Constitution. The Court DENIES the Defendants' Motion to Dismiss the Plaintiffs' claims for injunctive and equitable relief.

SIGNED this the 9th day of January, 1997, at Austin, Texas.

ALAN D ALBRIGHT
UNITED STATES MAGISTRATE JUDGE



000186